## ENGEL v. UNION SQUARE BANK.

(Supreme Court, Appellate Division, First Department. May 6, 1904.)

**1. BANKRUPTCY — INSURANCE POLICIES — ASSIGNMENT — FRAUDULENT PREFERENCE—JUDGMENTS—CONCLUSIVENESS.**

Where a trustee in bankruptcy brought suit against defendant to determine the ownership of certain policies of insurance, which had been assigned to it by the bankrupt after loss, claiming that the policies had been assigned in violation of Bankr. Act July 1, 1898, c. 541, § 60, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], prohibiting fraudulent preferences, a judgment in favor of defendant was a bar to a subsequent action by the trustee to recover the fund, or a part thereof, on the same ground.

**2. SAME—DISMISSAL OF COMPLAINT—FAILURE OF PROOF—MERITS.**

The fact that the judgment in the first case was entered on a dismissal of the complaint for failure of proof, and was not on the merits, did not prevent the judgment from operating as an adjudication of the ownership of the fund, which was then in court, and was represented by the policies assigned to defendant.

**3. SAME—FRAUDULENT PREFERENCE.**

In order to establish a fraudulent preference prohibited by Bankr. Act July 1, 1898, c. 541, § 60, subd. "a," 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], it must be shown that the preferred creditor actually received as a result of the transfer a greater percentage on his debt than that payable to the other creditors.

**4. SAME.**

Where, at the time defendant bank took an assignment of certain policies after loss, the assignor, who subsequently became a bankrupt, was indebted to the bank on a note about to mature, and he then represented to the bank's president that he needed the money to pay other creditors, and would have to discount the adjusted loss in order to obtain payment at once, but that he expected to resume business, whereupon the bank took an assignment of the policies, and paid the assignor the face value of the adjusted loss, less the amount due on the note, but by reason of the failure of one of the insurance companies the bank thereafter failed to collect even the amount of cash paid the assignor at the time of the assignment, the transfer of such policies did not constitute a fraudulent preference, prohibited by Bankr. Act July 1, 1898, c. 541, § 60, subd. "a," 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445].

Appeal from Trial Term, New York County.

Action by Isaac Engel, as trustee in bankruptcy of the estate of M. Joseph & Co., against the Union Square Bank. From a judgment in favor of defendant, plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

David Steckler, for appellant.

J. L. Weinberg, for respondent.

INGRAHAM, J. The plaintiff, as trustee in bankruptcy of a firm doing business under the name of M. Joseph & Co., brought this ac-

tion to recover from the defendant the sum of $1,000, which it was alleged was received by the defendant in payment of an existing indebtedness of the bankrupts to the defendant, as an unlawful preference within section 60 of the bankrupt law of July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]. Section 60 provides that:

"A person shall be deemed to have given a preference if, being insolvent, he has * * * made a transfer of any of his property, and the effect of the enforcement of such * * * transfer will be to enable any of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class."

Section 60b provides that:

"If a bankrupt shall have given a preference within four months before the filing of a petition, * * * and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee, and he may recover the property or its value from such person."

Section 60c provides that:

"If a creditor had been preferred, and afterwards in good faith gives the debtor further credit without security of any kind for property which becomes a part of the debtor's estate, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable."

It appeared from the plaintiff's evidence that the bankrupts had an account with the defendant bank; that some time prior to March 6, 1900, the bank discounted for this firm a note for $1,000, which matured on March 12, 1900; that on February 15, 1900, the bankrupts' place of business was burned out, upon which the bankrupts had several policies of insurance; that subsequent to the fire, and a few days prior to March 6, 1900, Joseph, one of the bankrupts, called upon the president of the bank, and stated that he had had a fire, but was going on in business; that his policies of insurance had been adjusted, and he had tried to get the money from the companies, but that to get it he would have to allow a discount, and that the firm wanted cash; that the amount of the policies which had been adjusted was $3,875, and that such amount was due from the companies to his firm; that he needed the money to pay to his creditors, as the firm was going on in business. As a result of this conversation, and relying upon these statements, the president of the defendant agreed to purchase the four policies of insurance, upon which there was due from the insurance companies the sum of $3,875, and to pay $2,875 in cash, the other $1,000 to be applied on the note of the firm becoming due in a few days; whereupon, on March 6, 1900, the bankrupts delivered to the bank an assignment of these policies and the amount due thereon, and received $2,875 in cash and the note which the bank had discounted. The president of the bank, who was called by the plaintiff, testified that the understanding was that the bank, in consideration of the assignment of the policies, gave to the bankrupts a cashier's check for $2,875 and the note for $1,000, and that when the bank collected in excess of the $2,875 from the insurance companies it was to apply it to the payment of the note; that the bankrupts' account with the bank on March 6th showed a credit balance of

$19.33, which was paid to them on March 7th, the day after the transaction, when the account was closed   On the 9th of March, 1900, a petition in bankruptcy was filed against the bankrupts by certain creditors, and on the 27th of March, 1900, they were adjudged bankrupts, and the plaintiff was subsequently appointed. trustee.   After his appointment, the plaintiff commenced an action. in the Supreme Court against the insurance companies, upon the ground that the transfer of the policies to the bank was a violation of the bankrupt act, and that the trustee was entitled to recover the amount of the policies from the insurance companies, notwithstanding the transfer to this defendant.   That case came on for trial at Special Term, whereupon the court filed a decision, separately stating the facts found; which decision found that the allegations of the complaint that on the 6th day of March, 1900, the firm of M. Joseph & Co. made, executed, and delivered to the Union Square Bank (this defendant) an assignment of their claim against the insurance companies were true, but that the allegations that said assignments were made by M. Joseph & Co. while insolvent, and with the intent and purpose to hinder, delay, and defraud their creditors and for the purpose of giving the defendant, the Union Square Bank, a preference over all the other creditors of the firm of M. Joseph & Co., of which the defendant, the Union Square Bank, had due notice and knowledge, were not true, and were not sustained by the evidence; that the allegations of the complaint that the transfer of the said four policies of insurance by the firm of M. Joseph & Co.' to the defendant, the Union Square Bank, were void under the laws of the United States entitled "An act to establish a uniform system of bankruptcy throughout the United States, approved July 1st, 1898," under section 67, subd. "e," 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], and section 60, subds. "a" and "b," 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], are not true, and are not sustained by the evidence; and that the allegations of the complaint that the firm of M. Joseph & Co., on or about the 6th day of March, 1900, paid to the defendant, the Union Square Bank, the sum of $1,000 for an existing debt owing by said firm, and the said defendant had knowledge that the firm of M. Joseph & Co. was insolvent, and unable to pay its debts in full, and that said payment was made to enable the defendant, the Union Square Bank, to obtain a preference over other creditors of the firm of M. Joseph & Co. within four months prior to the filing of the petition in bankruptcy against and the adjudication of said firm as bankrupts, are not true, and are not sustained by the evidence; that the assignment made by the firm of M. Joseph & Co. on March 6, 1900, to the Union Square Bank, of the said firm's claims under the policies of insurance issued to it by the four insurance companies, were made for a good and valuable consideration moving at the time, and the said assignments were good and valid assignments of said claims; and that the defendant, the Union Square Bank, is entitled, under the aforesaid assignments of the claims of the firm of M. Joseph & Co., to have and receive the moneys paid into court, or to John Welch, Esq., receiver, from the said insurance companies, who were defendants in the action; and that the defendant, the Union Square

Bank, is entitled to a judgment against Harry A. Hanbury, as receiver of the Traders' Fire Insurance Company of New York, for the sum of $1,000, with interest from March 6, 1900. And upon this decision a judgment was entered, which dismissed the complaint of the plaintiff, with costs; directed that the receiver who had been appointed should receive and hold, subject to the order of the court, of the moneys paid by three of the four insurance companies upon the policies assigned to the Union Square Bank the sum of $2,875, being the total of the said sum received by him; and gave to the bank a judgment against the insurance company that had failed for the amount due on its policy, with interest. It was conceded by the plaintiff that the total amount received by the defendant as the proceeds of these policies of insurance assigned to it was the sum of $2,601.65, and that the judgment against the remaining insurance company, which had become insolvent, was not paid, and that nothing had been received thereon; whereupon the court dismissed the complaint, and from that judgment the plaintiff appeals.

There are at least two fatal objections to a recovery by the plaintiff in this action. The first is that the question as to the right of the defendant to the money due from the insurance companies was determined adversely to the plaintiff in an action brought to recover that money by the plaintiff against the defendant, and in which the question litigated and determined against the plaintiff was the precise question presented in this case. The fact that the dismissal of the complaint was not upon the merits, but upon failure of proof, did not prevent this judgment from being an adjudication as to the ownership of this fund then in court, and which was represented by the policies of insurance that had been assigned to the defendant. The question in controversy in that action was as to the ownership of these policies of insurance and the right of the parties to the action to the amount due thereon. The claim of the plaintiff in that action was that the policies had been assigned in violation of section 60 of the bankrupt act, and the court found that the allegations upon which that claim was based were not true, and not sustained by the evidence; and upon that finding an affirmative judgment was entered, directing the receiver to whom had been paid the amount due on three of the policies to pay such amount to the defendant. Here was an express adjudication that the defendant was entitled to that money, and, the plaintiff having presented that issue, and it having been determined against him, that judgment, based as it was upon a finding of fact that the transfer was not in violation of the bankrupt law, was a bar to another action by the trustee in bankruptcy to recover the fund, or any part thereof, as the property of the bankrupt.

We also think that, irrespective of this adjudication, upon the conceded facts the plaintiff was not entitled to recover. The defendant bought these policies, paying therefor in cash $2,875, and delivering to the bankrupts their obligation, which was due in a few days, amounting to $1,000. The president of the bank, who had made the purchase on behalf of the bank, testified that the understanding was, when he made the purchase, that when the $1,000 over and above the amount that the bank paid to the defendant for the

assignment of the policies was received it would be applied in payment of the note; and there was no evidence to contradict this testimony. If these policies were paid, the bank would secure the payment of the note of the bankrupt that it held; and it is not improbable that this influenced the president of the bank in the purchase of the policies. But there is nothing to show that at the time of this transaction the bank had knowledge that the bankrupts were insolvent, or would be unable to continue business; the only evidence upon that subject being that the president of the bank, when called by the plaintiff, testified that one of the bankrupts stated that they were all right, and intended to continue business, but needed this money to pay to creditors. There was nothing unusual or suspicious in this application. The bankrupts' business had been destroyed by fire, but, as they were insured, there was nothing to justify the bank in suspecting that they thereby had become insolvent.

Nor do I think that this transfer was a preference within subdivision "a" of section 60 of the bankrupt act. To constitute a preference, it must appear that the bankrupts have made a transfer of their property, the effect of which was to enable one of his creditors to obtain a greater percentage of his debt than other of such creditors of the same class. These bankrupts made a transfer of a portion of their property, namely, their claim against these insurance companies; but the effect of that transfer was not to enable the bank to obtain a greater percentage of its debt than the other creditors. The defendant bank has so far obtained nothing in excess of the amount which it actually paid in cash at the time of the transfer. Under this provision of the law it would be quite immaterial what the bank intended or expected when it received the assignment. It is not a preference unless the effect of the transfer will enable the bank to receive a greater percentage of its debt than the other creditors of the bankrupt. This transfer of property has not had this effect, for it is conceded that all that the bank has received is $2,601.65, and it actually paid at the time of the transfer $2,875. The fact that it has a judgment against an insolvent insurance company, which it has been unable to collect, does not make the defendant responsible, as if it had collected that judgment. To entitle an assignee in bankruptcy to recover under this provision of the statute, it would seem that he is bound to show that the preferred creditor had actually received as a result of the transfer a greater percentage on his debt than that payable to the other creditors; and that, by the concession of the plaintiff, is not the fact. That this was the intent of the law is shown by subdivision "c" of the section, which provides that if a creditor has been preferred, and who afterwards in good faith gives the debtor further credit without security, the amount of such new credit remaining unpaid at the time of the adjudication in bankruptcy may be set off against the amount which would otherwise be recoverable from the creditor. We think, therefore, the evidence failed to show that the bank, at the time it took this transfer, had reasonable cause to believe that it was intended thereby to give the bank a preference; that, as a matter of fact, the transaction set forth was not a preference within subdivision

"a" of section 60 of the bankrupt act, and that the plaintiff was not entitled to recover.

It follows that the judgment appealed from must be affirmed, with costs. All concur; PATTERSON, J., in result.